# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| GLENN BEEBE, | Case No. CV 08-00228-S-REB |
| Petitioner, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE<br>Commissioner of Social Security, | |
| Respondent. | |

Currently pending before the Court is Glenn Beebe's Petition to Review (Docket No. 1) Respondent's decision denying him Social Security benefits.  A hearing is not necessary to resolve this matter; the Court will decide the petition on the administrative record and briefs. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii).  The Court enters the following Memorandum Decision and Order denying the Petition to Review.

## I.  ADMINISTRATIVE PROCEEDINGS

On October 31, 2003, Glenn A. Beebe, Petitioner, was fired from his job at Franklin Building Supply.  (AR 215).  On September 21, 2004, he applied for both Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI.  (AR 14).  Petitioner alleges that his disability – weak legs and frequently falling – began on October 31, 2003.  (AR 215).

**MEMORANDUM DECISION AND ORDER- p. 1**

Petitioner's claims were denied initially on March 3, 2005, and upon reconsideration on June 27, 2005.  (AR 14).  He timely requested a hearing before an Administrative Law Judge ("ALJ").  (AR 14.)

After a hearing in Twin Falls on August 22, 2006, an ALJ again denied Petitioner benefits in a decision dated May 2, 2007.  (AR 14, 25).  Petitioner requested the Appeals Council to review the ALJ's decision (AR 182); the request was denied on November 9, 2007 (AR 7).

On May 27, 2008, Petitioner asked this Court to reverse the decision of the Commissioner of Social Security ("Commissioner") and award him disability benefits.  *Petition for Review* (Docket No. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

**MEMORANDUM DECISION AND ORDER- p. 2**

With respect to questions of fact, this Court's task is to review the entire record to determine whether it contains evidence that would allow a reasonable mind to accept the ALJ's conclusions. *See Richardson*, 402 U.S. at 401. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457.

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act (the "Act") is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

## III.  DISCUSSION

### A.      Evaluating a Claim for Disability

Having an impairment is not enough to claim disability under the Act. A claimant is only disabled if the impairments prevent him from working at his previous jobs and at any other kind

MEMORANDUM DECISION AND ORDER- p. 3

of work that exists in significant numbers.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  The claimant's impairment, age, education, and work experience are considered in deciding whether he can obtain other work.  *Id.*  To qualify as disabled, it is not necessary for the work to exist in the immediate area, a position to be vacant, or for the Petitioner to be hired if he applied.  *Id.*

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Here, the ALJ identified and followed the five-step process for determining whether Petitioner is disabled.  (AR 15).

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the answer is in the affirmative, disability benefits are denied.  20 C.F.R. § 404.1520(b).  In this case, the ALJ found Petitioner had not worked since the alleged onset date of October 31, 2003.  (AR 16).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  Here, the ALJ found Petitioner had severe impairments – hepatitis, chronic obstructive pulmonary disease, malnutrition, emphysema, and alcohol abuse.  (AR 16).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  20 C.F.R. § 404.1520(d).  In this case, the ALJ concluded that Petitioner does not have an impairment, singly or in combination, that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (AR 16).

**MEMORANDUM DECISION AND ORDER- p. 4**

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Here, the ALJ concluded that Petitioner retains the RFC to perform sedentary work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  (AR 17).  Based on this RFC, the ALJ found that Petitioner cannot perform any past relevant work.  (AR 23).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  In this case, the ALJ found that, Petitioner's age, education, work experience, and RFC allowed him to adjust to perform other work that existed in significant numbers in the national economy, such as document preparer, food and beverage order clerk, and charge account clerk.  (AR 24).  Therefore, the ALJ ruled that Petitioner was not disabled from October 31, 2003, through May 2, 2007.  (AR 25.)

**B.     Petitioner's Issues with the ALJ's Decision**

Petitioner claims there is reversible error because: (1) the Appeals Council did not consider the treating physician's report on Petitioner's mental health submitted after the ALJ's decision and (2) the ALJ found Petitioner can adjust to other work despite the treating physician's contrary opinion.  *See Petitioner's Brief* ( Docket No. 18)**.**

**MEMORANDUM DECISION AND ORDER- p. 5**

**C.      This Court lacks jurisdiction to review the Appeals Council denial of review.**

On November 9, 2007, the Appeals Council denied Petitioner's request for it to review the ALJ's decision.  (AR 7-9).  Petitioner argues the Appeals Council erred because it failed to consider a July 14, 2007 report from treating physician Dr. Spencer when it denied review.[1]  *Petitioner's Brief*, p. 5 (Docket No. 18).  This argument assumes the Appeal Council must give reasons for disregarding Dr. Spencer's new report.  No authority was offered to support this assertion.  *Id*.

Whatever the merits of Petitioner's claim, this Court lacks jurisdiction to address the Appeals Council's denial of review.  Federal district courts are only granted jurisdiction in Social Security cases to review "any final decision of the Commissioner of Social Security made after a hearing."  42 U.S.C. § 405(g).  When the Appeals Council declines review, the ALJ's decision becomes the binding decision.  20 C.F.R. § 404.981.  This "renders the ALJ's decision the Commissioner's final decision."  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172 (9th Cir. 2008).  Since a denial of review is not the Commissioner's final decision, federal courts lack jurisdiction to review the denial.  *Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995) ("When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Secretary.  We then have no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action.").

---

[1]  The Appeals Council stated it considered this new evidence by supplementing the record (AR 10) and considering the additional evidence (AR 7).  Petitioner provides no evidence to the contrary.

**MEMORANDUM DECISION AND ORDER- p. 6**

**D.    Substantial evidence supports the ALJ's determination of Petitioner's RFC and ability to adjust to other work.**

    <u>1.  The ALJ properly rejected the treating physician's opinion.</u>

The ALJ rejected Dr. Spencer's opinion regarding physical impairments, cognitive impairments, and ability to return to work.  (AR 22).  Petitioner claims the opinion is entitled to special weight and the ALJ wrongfully rejected it.  *See Petitioner's Brief* (Docket No. 18).  For reasons that follow, this Court finds that the ALJ properly rejected these opinion.

        a.  The ALJ needs only to provide "specific and legitimate" reasons for discounting Dr. Spencer's opinion.

Generally treating physicians' opinions receive special weight in the Commissioner's analysis because they are able to give a longitudinal picture of the patient's medical impairments.  20 C.F.R. § 404.1527(d)(2).  The Ninth Circuit has held that a treating doctor's opinion is entitled to special consideration and weight: "The medical opinion of a claimant's treating physician is entitled to 'special weight.'  The treating physician's opinion is given that deference because 'he is employed to cure and has a greater opportunity to know and observe the individual.'"  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).

A treating physician's opinion that is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the case record receives controlling weight.  20 C.F.R. § 404.1527(d)(2).  An ALJ must provide "clear and convincing" reasons supported by substantial evidence to reject or discount a treating physician's opinion that receives controlling weight.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

**MEMORANDUM DECISION AND ORDER- p. 7**

However, if the treating physician's opinion is contradicted by another doctor, then the Commissioner may reject the treating physician's opinion provided he has "specific and legitimate reasons" to do so supported by substantial evidence in the record.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  In addition, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

Here, the treating physician's opinion is contradicted by an RFC report from a non-examining physician (AR 146-53).  The treating physician, Dr. Spencer, opined that Petitioner cannot sit for more than two hours in a day or stand for more than an hour in a day.  (AR 158-59).  In contrast, the non-examining physician determined that Petitioner could stand for two hours and sit for about six hours in a work day.  (AR 147).  Because the treating physician's opinion is contradicted by another physician, the ALJ may reject the treating physicians' opinion for specific and legitimate reasons supported by substantial evidence in the record.

> b.  The testimony at the hearing was a "specific and legitimate" reason for discounting Dr. Spencer's opinion as to Petitioner's functional capabilities.

On December 19, 2005, Dr. Spencer gave his opinion of Petitioner's physical capabilities.  (AR 158).  In Dr. Spencer's opinion, Petitioner's impairments require him to:

- Rest during walks of less than one block;
- Recline or lie down for four hours of an eight hour work day; and
- Take breaks every 15-30 minutes for 5 minutes.  (AR 158-59.)

And the symptoms prevent Petitioner from:

- Concentrating on performing simple work-related tasks;
- Sitting for more than 60 minutes at a time or two hours in a day;
- Standing or walking for 5 minutes at a time or more than an hour in a day;
- Lifting or carrying weight, even less than 10 pounds;

**MEMORANDUM DECISION AND ORDER- p. 8**

     •     Using his hands more than 10% of the time in a day; or

     •     Using his arms at all throughout a work day.  (AR 158-59.)

This evaluation is primarily based on Petitioner's communications with Dr. Spencer. While general observations of a patient can inform a doctor's opinion, even a doctor cannot come to the specific opinion on functional capabilities from the general appearances of a patient. Dr. Spencer did not perform functional testing to directly support these determinations.  (AR 160).  Dr. Spencer states that he based this opinion on: direct observation; physical examination; historical medical records; clinical testing; patient report; imaging studies; and his own experience.  (AR 160).  However, the clinical notes lack any reference to direct observations that support the conclusion that Petitioner must lie down for four hours a day or cannot use his arms.  (AR 116-32).  On the other hand, there are extensive notes describing Petitioner's complaints and self-reported weaknesses.  (AR 116-32).

Dr. Spencer's opinion is in conflict with much of Petitioner's testimony at the hearing. Petitioner testified he can:  work full time (AR 200); sit for long periods, as long as it is not on a hard bench (AR 205-06); stand for a couple of hours without his crutch if he does not have to move (AR 206); return to his previous job in the truss yard at Franklin Building Supply (AR 206); and perform tasks that require use of his arms, such as mopping (AR 205).

Further, Petitioner's father testified consistent with Petitioner on his functional capabilities.  Petitioner's attorney asked: "Is there a, a problem walking, is that a problem for him you think?"  (AR 218.)

Petitioner's father answered:  "I don't think so." (AR 218).

"What about lifting?"   (AR 218).

"Not over 25 pounds."  (AR 218).

**MEMORANDUM DECISION AND ORDER- p. 9**

This testimony conflicts with Dr. Spencer's opinion on Petitioner's ability to walk, stand, sit, lift objects, and manipulate objects with his arms.  The ALJ provided these discrepancies as a reason to reject the medical opinion.  (AR 22).  Because Dr. Spencer did not perform functional testing, the opinion relies in a large part on his communication with Petitioner.  The discrepancy between Petitioner's testimony and Dr. Spencer's opinion, which must be based on Petitioner's representations to Dr. Spencer, is substantial evidence supporting a specific and legitimate reason for rejecting Dr. Spencer's opinion.  There is some degree of paradox in the fact that the source for such evidence is from the Petitioner himself, and his father, but such an unusual circumstance does not change the essential nature of such testimony as substantial evidence supporting the ALJ's decision to reject Dr. Spencer's opinion.

> c.  The letters Dr. Spencer submitted to the ALJ were properly rejected for failing to discuss an important cause of Petitioner's impairments.

Contradictions between a doctor's clinical notes and his medical opinion submitted to the ALJ are further specific and legitimate reasons for rejecting the medical opinion.  An ALJ had substantial evidence to reject an opinion that a petitioner could only walk for fifteen minutes at a time when the clinical notes the doctor took contradicted that statement.  *Bayliss*, 427 F.3d at 1216.  "Such a discrepancy is a clear and convincing reason for not relying on the doctor's opinion regarding [petitioner's] limited ability to stand and walk."  *Id*.  If such a discrepancy satisfies the clear and convincing standard it will satisfy the specific and legitimate standard that applies in this case.

Dr. Spencer repeatedly linked Petitioner's weakness to his poor nutrition.  On June 8, 2004, the doctor associated Petitioner's weight loss to his poor dental health and eating only one meal a day.  (AR 124).  On July 9, 2004, Dr. Spencer noted that Petitioner's leg weakness

**MEMORANDUM DECISION AND ORDER- p. 10**

improved as his food intake increased.  (AR 123).  The doctor recommended multivitamins and Ensure supplements to help Petitioner gain weight and strength.  (AR 123).  On August 3, 2004, Dr. Spencer linked Petitioner's leg weakness to his poor nutrition.  (AR 122).  Again, on May 12, 2005, the notes show Petitioner was eating more; gained seven pounds, back up to 132; and improved his leg strength.  (AR 116, 118).

This is consistent with Petitioner's testimony at the hearing of how he gained weight back to 135 pounds at the time of the hearing on August 22, 2006.  (AR 202-03).  The ALJ asked: "So were you down to 121 [pounds] at one point?"  (AR 202.)

Petitioner answered: "Yes." (AR 202).

"So why – how come you gained 14 pounds?" (AR 202).

"Started eating more." (AR 202).

"So if you just eat the right amount of food, you can gain weight?" (AR 202-203).

"Yeah...." (AR. 203).

However, Dr. Spencer's September 7, 2004 letter to the ALJ does not mention the extent Petitioner's health depends on his diet.  (AR 114).  The letter in its entirety states: "Mr. Beebe has a number of chronic health problems including chronic liver disease, mal-absorption of food with resulting malnutrition and chronic lung disease.  He has physically been unable to do work of any kind for the previous ten months due to his medical illnesses."  (AR 114).

The doctor's statement that Petitioner has a chronic problem with mal-absorption of food conflicts with the clinical notes one month earlier that Petitioner's impairment is caused by an improper diet.  As the Ninth Circuit found it appropriate to reject the medical opinion in *Bayliss* for contradiction with the clinical notes, this inconsistency between the clinical notes and the

**MEMORANDUM DECISION AND ORDER- p. 11**

opinion is substantial evidence of a specific and legitimate reason to reject Dr. Spencer's opinion

here.

>    d.  The ALJ appropriately rejected Dr. Spencer's opinion on cognitive difficulties,
>    and the July 14, 2007 report submitted to the Appeals Council does not change
>    the balance of the evidence.

A treating physician's opinion lacking supporting evidence can be rejected.  *Thomas v.*

*Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any

physician, including a treating physician, if that opinion is brief, conclusory, and inadequately

supported by clinical findings.").  In *Young v. Heckler*, 803 F.2d 963, 967 (9th Cir. 1986), a

treating physician "checked off boxes on a standard insurance disability form indicating that

applicant was 'totally disabled' from performing work 'in any occupation.'"  The Ninth Circuit

found the report "brief and conclusory in form with little in the way of clinical findings to

support the conclusion."  *Id*. at 986.  Because of the lack of support for the treating physician's

opinion, the Ninth Circuit affirmed the ALJ's decision against the petitioner.  *Id*. at 969.

On July 14, 2007, Dr. Spencer provided his opinion on Petitioner's mental status in the

form of a Medical Source Statement of Ability to do Work-Related Activities (Mental) report.

(AR 186).  This is after the ALJ's adverse decision on May 2, 2007.  (AR 25).  The Court will

consider reports filed later as part of the total weight of evidence in considering the disposition

of the case. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) (considering additional

material submitted to the Appeals Council). However, opinions submitted after an adverse ALJ

determination are less persuasive.  *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989).

Dr. Spencer states that Petitioner cannot do physical work.  He identified marked

limitations for Petitioner in responding to changes in a work setting, understanding detailed

**MEMORANDUM DECISION AND ORDER- p. 12**

instructions, and carrying out detailed instructions. (AR 186-87). This new report was on Social

Security Form HA-1152 (4/00), which requests the completing doctor to identify particular

medical signs, laboratory findings, and other factors that support the assessment. (AR 186). The

support for the opinion was identified as Petitioner's past work history, memory loss, exams for

diagnosis of physical limitations, and corroborating statements by Petitioner's father. (AR 187).

Dr. Spencer also states Petitioner has permanent brain injury and borderline personality disorder.

(AR 186-87). Petitioner argues this is new and material evidence. *Petitioner's Brief*, p. 5

(Docket No. 18)..

 This is not new evidence. On July 18, 2006, Dr. Spencer wrote a letter stating

Petitioner's "illness is starting to also cause memory loss and confusion." (AR 162). On

December 19, 2005, in the RFC questionnaire, Dr. Spencer stated that Petitioner cannot

concentrate on simple work-related tasks and "probably has borderline personality disorder – <u>not</u>

officially evaluated at this office." (AR 158-59) (emphasis in original).

 The ALJ evaluated this claim in the RFC analysis and rejected it because there was no

support in the clinical notes of cognitive difficulties. (AR 22). While Dr. Spencer did not

normally complete all areas of his checklist for every office visit, he did make mental status

evaluations on August 3, 2004, July 9, 2004, April 23, 2004, and April 20, 2004. (AR 122, 123,

125, 126). On these dates, Dr. Spencer concluded that Petitioner's mental status was normal and

he was alert and oriented to person, place, and time.[2] Because Dr. Spencer evaluated and noted

Petitioner's mental status on four office visits, the ALJ logically drew the inference that if Dr.

---

 [2] This Court is not identifying a check-the-box evaluation in clinical notes as evidence
that Petitioner has "normal" mental status but as evidence Dr. Spencer would have made a note
of cognitive difficulties if he identified a problem.

**MEMORANDUM DECISION AND ORDER- p. 13**

Spencer had identified a problem with Petitioner's mental status, that fact would be contained in the treatment notes.  Since no treating notes identify an impaired mental status, the lack of support in the clinical notes is substantial evidence supporting the rejection of the opinion of cognitive difficulties.

> e. The ALJ appropriately rejected Dr. Spencer's opinion on Petitioner's ability to adjust to other work.

>> i. The decision as to a Petitioner's ability to adjust to other work is a determination for the Commissioner.

No matter how persuasive a physician's opinion, where those opinions tread upon issues reserved for the Commissioner they are not binding and do not carry any special significance. 20 C.F.R. § 404.1527(e)(3).  It is the responsibility of the Commissioner, not a physician, to determine RFC, ability to work, and disability.  § 404.1527(e)(1)-(2).  "[T]he opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 601(9th Cir. 1999).  While treating physicians are experts in the medical field, they are not experts when it comes to what jobs exist in the national economy and what attributes are necessary to work in one of those jobs.

In this case, there was no error in the ALJ making a determination different than Dr. Spencer on the ability to adjust to other  work.  It is the ALJ's responsibility to make the evaluation, and evaluating whether Petitioner is able to work must be based on the Petitioner's RFC.  Dr. Spencer's opinion of Petitioner's functional capacity was rejected by the ALJ., for reasons supported by reference to the Petitioner's RFC.

**MEMORANDUM DECISION AND ORDER- p. 14**

> ii. Petitioner's history of working with his impairments is additional substantial evidence supporting the ALJ's rejection of Dr. Spencer's opinion on the ability to adjust to other work.

In *Bayliss*, the physician determined the claimant had difficulty paying attention, concentrating, and organizing herself without getting overwhelmed. 427 F.3d at 1216. The claimant faced and managed to deal with these impairments while she graduated high school, obtained a college degree, and completed nurse training. *Id*. The Ninth Circuit held that the claimant's ability to successfully cope with her disability for years was substantial evidence to support the ALJ's rejection of the her physician's assertion to the contrary.

This case is analogous to the facts at play in the *Bayliss* case. On September 7, 2004, Dr. Spencer expressed the opinion that Petitioner "has physically been unable to do work of any kind for the previous ten months due to his medical illnesses." (AR 114). Dr. Spencer also wrote letters dated July 18, 2006 (AR 162), October 2, 2006 (AR 188), and April 17, 2007 (AR 161), claiming that Petitioner cannot  work because of his impairments. Additionally, on July 14, 2007, Dr. Spencer completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) claiming Petitioner cannot perform physical work. (AR 187).

Petitioner's testimony contradicted Dr. Spencer's opinion and alleged statements of fact, and indicated that the Petitioner could work, despite his impairments. The Petitioner identifies October 31, 2003 as the alleged onset date of disability. Petitioner's attorney asked him: "What are some of these problems that prevent you from working?" (AR 200).

Petitioner answered: "The injury to my knee." (AR 200).

"When did the injury to your knee happen?" (AR 200).

"It was back around '77, '78." (AR 200).

**MEMORANDUM DECISION AND ORDER- p. 15**

"But you worked consistently since then, is that right?" (AR 200).

"Yes."  (AR 200).

When asked why Petitioner chose October 31, 2003 as the disability date, he responded: "I got [laid] off."  (AR 215).

The ALJ sought to clarify by asking: "Well did you get [laid] off because of a disability, or did you get [laid] off because they were closing the business down and other people were [laid] off, or what was the reason you were [laid] off?"  (AR 215).

"Depending on what time of year it was, it could have been because of the weather. Because the position I held at Franklin's was cutting and help building trusses for housing and in the winter months there ain't much building going on when it's too cold so everybody generally gets [laid] off."  (AR 215).

(AR 215).

The ALJ asked Petitioner: "So when you stopped working and at the time you were [laid] off, were you still able to do that job?"  (AR 216).

"Yes."  (AR 216).

Other than periodic fluctuations in weight, Dr. Spencer's opinions and treatment notes do not discuss a change in the impairment that would have prevented Petitioner from working as he did prior to October 31, 2003.  He weighed 135 pounds on October 22, 2003, when he was working.  (AR 132).  While his weight had been as low as 121 pounds, at the time of the hearing Petitioner testified he regained the weight, back to 135 pounds again.  (AR 202).  This and the testimony he could return to work at Franklin Building Supply (AR 206) is substantial evidence that Petitioner was no more disabled at the time of the hearing than he was when he was working

**MEMORANDUM DECISION AND ORDER- p. 16**

before October 31, 2003.  As in *Bayliss,* the Petitioner's  ability to work despite an impairment was substantial evidence the petitioner was not disabled.  Therefore, the ALJ appropriately rejected Dr. Spencer's opinion to the contrary.

    <u>2.  Substantial evidence supports the ALJ's finding that Petitioner has the RFC to work at a sedentary level.</u>

    There is testimony in the record that Petitioner can: return to work at his previous job in the truss yard (AR 206); work full time (AR 201); sit for an extended period of time (AR 205-06); stand stationary (AR 206); walk or walk with assistance (AR 218, 212); lift less than 25 pounds (AR 207, 218); and perform household chores, like mopping, vacuuming, and dusting (AR 205).  The most appropriate quote to summarize Petitioner's testimony is "I can work, but it's got to be light duty."  (AR 207.)

    Overall, the evidence supports the ALJ's finding Petitioner can "perform sedentary exertional level work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling."  (AR 17).  While Petitioner has impairments that make walking difficult, after looking at all the evidence, this Court only looks to see if substantial evidence supports the ALJ's RFC determination.  42 U.S.C. § 405(g).  There is substantial evidence to support the ALJ's decision; this Court upholds the RFC determination.

    <u>3.  The ALJ's determination that Petitioner can adjust to other work and is not disabled at step five is supported by substantial evidence.</u>

    The conclusion Petitioner can adjust to perform other work is dependent on and supported by the above established RFC to perform sedentary work.  At the hearing, Anne Aastun testified as a vocational expert.  (AR 223).  The ALJ asked her what jobs exist in the national economy for a hypothetical person with Petitioner's RFC, age, education, and work

**MEMORANDUM DECISION AND ORDER- p. 17**

experience.  (AR 225-26).  Aastun identified four different jobs with 139,500 jobs in the national

economy available for a person with these characteristics.  (AR 226-28, 231).  These jobs and

number of positions are consistent with the Dictionary of Occupational Titles.  (AR 226-29,

231).  She also testified that 7% of these jobs are located regionally – Arizona, Colorado, Idaho,

Montana, Nevada, New Mexico, Utah, and Wyoming.  (AR 229).  Further, based on testimony at

trial, Aastun testified that Petitioner could perform those jobs, even if he required the use of a

cane.  (AR 230-31.)

A claimant is not disabled if he can adjust to other work that exists in significant numbers

in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  The vocational expert's testimony that

the ALJ relied upon provides substantial evidence to support the ALJ's decision that Petitioner

can adjust to other work that exists in significant numbers in the national economy.  (AR 24-25).

Also, Petitioner's ability to work prior to October 31, 2003, with no change as to disability on

October 31, 2003, is further evidence of his ability to work.  Therefore, this Court must affirm

the ALJ's decision that Petitioner can adjust to other work and is not disabled.

## IV.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the Commissioner's decision is

AFFIRMED and Petitioner's Petition to Review (Docket No. 1) is DENIED.  This case shall be

DISMISSED with prejudice.

DATED:  **September 15, 2009**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER- p. 18**